**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**ALWYN RICHARDS,**

       **Plaintiff**

**v.**                            **Case No.**

                                 **JURY TRIAL DEMANDED**

**PEPSICO, INC.,**

       **Defendant**

       **Serve: CT Corporation System
             4701 Cox Rd., Ste. 285
             Glen Allen, Virginia 23060**

## COMPLAINT

COMES NOW the Plaintiff, Alwyn Richards ("Plaintiff"), by counsel, and as and for his Complaint against the Defendant, PepsiCo, Inc. ("Defendant" or "PepsiCo") states as follows:

### Parties

1.      Plaintiff is a natural person and a resident of the Commonwealth of Virginia and the City of Norfolk, Virginia. Plaintiff is black and an immigrant from Saint Kitts and Nevis. At the time of his termination, Plaintiff was 63 years old.

2.      PepsiCo is a North Carolina corporation with its principal office in New York engaged, *inter alia*, in the manufacturing, marketing and distribution of various snack and beverage products throughout the United States and elsewhere. PepsiCo owns and/or operates several warehouses and/or distribution facilities in Virginia, including one located at 1194 Pineridge Road in Norfolk (the "Norfolk Facility"), at which Plaintiff was employed.

## Jurisdiction and Venue

3.      This civil action arises under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d-7 and 2000e, *et seq.,* the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* At all relevant times, Defendant has employed more than five hundred (500) persons and engages in interstate commerce. Jurisdiction is proper in this Court.

4.      Venue is proper in this District and Division because the Defendant conducts business within the City of Norfolk, Virginia and the events complained of herein took place within the City of Norfolk.

## Exhaustion of Administrative Remedies (Counts I through IV)

5.      Prior to instituting this civil action, Plaintiff timely filed an administrative claim with the Norfolk office of the Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit 1.

6.      On or about August 5, 2020, the EEOC issued a "right to sue" letter to Plaintiff after failing to resolve the Plaintiff's administrative claim, with Plaintiff receiving it approximately two or three days later. *See* Exhibit 2. Plaintiff has filed the instant civil action within ninety (90) days of his receipt of notice authorizing him to file this civil action in federal or state court, to the extent applicable to Counts I though IV herein.

## Facts and Background

7.      Defendant employed Plaintiff first from June 10, 2013 to September 7, 2015 as a part-time warehouse associate and then through his termination on or about July 15, 2019 as a full-time gate checker at the Norfolk Facility At all times relevant herein, Defendant was an "employer" and Plaintiff was an "employee" under Title VII of the Civil Rights Act of 1964, 42

2

U.S.C. §§ 2000e, *et seq.* as well as the Age Discrimination in Employment Act and the Fair Labor Standards Act.

8.      Plaintiff's duties as a gate checker included, *inter alia*, controlling traffic in and out of the Norfolk Facility from a guard shack, checking shipments and logging information regarding visitors and/or loads into Defendant's record-keeping system. Plaintiff was also later required to "re-work" returned undistributed 20-oz. soft drink bottles into new plastic-wrapped cases in addition to his regular gate checking duties.

9.      In 2015, Plaintiff was promoted to gate checker by manager Shaun Spivey. At that time, he advised Plaintiff that there would often be no time to clock out for lunch and that Plaintiff should bring his lunch with him into the guard shack and that he could eat while on the clock.

10.      By late 2017, Shaun Spivey had been replaced as manager by Mark Henley ("Mr. Henley"). On or about December 19, 2017, Mr. Henley and supervisor Latasha Leggett ("Ms. Leggett") told Plaintiff that he had to clock out for thirty minutes to eat lunch at certain times to be prescribed by Mr. Henley and that there would be a substitute arranged to relieve Plaintiff in the guard shack at those times so that he could eat lunch elsewhere. Plaintiff was to work at least forty hours per week on the clock, plus any overtime as needed or directed. Despite the foregoing, Defendant subsequently rarely provided Plaintiff with either specific lunch break times or substitute relief, thereby regularly forcing Plaintiff to clock out for thirty minutes to eat lunch while still working in the guard shack, under threat of suspension and/or termination.[1] Upon Plaintiff's information and belief from speaking with other gate checkers, Plaintiff was

---

[1] Supervisors, in particular Ms. Leggett, would threaten Plaintiff with discipline for days on which he did not clock out for thirty minutes, with Ms. Leggett going as far as to obtain a print-out of Plaintiff's time in order to point to specific days on which Plaintiff did not clock out for lunch.

treated in a disparate manner than the other gate checkers who were not of his national origin or age.

11.     Following Mr. Henley's ascension to manager, Plaintiff was given a workload substantially greater than the other gate checkers, which required him to perform certain tasks, specifically the "re-working" of undistributed 20-oz. soft drink bottles, that was not supposed to be done at his post at the guard shack. As a result, Plaintiff very often struggled to complete all assigned tasks within his scheduled shifts.

12.     On or about June 14, 2018, Plaintiff received his first formal "coaching." Supervisor Clifton Wiggins ("Mr. Wiggins"), in the presence of witness Jaquan Parker, advised Plaintiff that he had allegedly improperly allowed an employee inside the gate in a personal vehicle with two family members in order to pick up an allotment of "employee drinks." Mr. Wiggins did not appear to Plaintiff to want to give a formal coaching regarding this matter and actually told Plaintiff that Mr. Henley had told him to do it, regardless of other gate checkers allowing employees accompanied by family members inside the gates fairly commonly.

13.     On or about July 10, 2018, Mr. Henley suspended Plaintiff for a day without pay after admitting that Plaintiff had accidentally mis-coded certain cases of Crush soft drinks as stolen, while they were in the warehouse at the Norfolk facility.

14.     On or about September 18, 2018, with a pending hurricane and/or tropical storm forecast for the Tidewater area, the Norfolk Facility was set to close due to expected weather conditions. Plaintiff placed the lock on the gate but did not completely close the lock, in keeping with well-established practice (Plaintiff had been previously told to never fully shut the lock). The following morning, Plaintiff and Mr. Henley spoke by telephone, during which conversation Mr. Henley stated that he had checked the gate and everything was fine. Despite the established

practice and his statements on the telephone call, Mr. Henley subsequently suspended Plaintiff for a week without pay for not fully shutting the lock and issued Plaintiff a "last chance" notice upon his return from suspension.

15.     Throughout Plaintiff's time as a gate checker, he was regularly excluded from staff meetings conducted by management, leading him to be forced to obtain necessary work-related information or materials through secondhand sources. Defendant commonly forced Plaintiff to falsely sign sign-in sheets as if he had been present at meetings from which he was excluded. Plaintiff has been told by co-workers that they understood him to be excluded due to alleged difficulties in understanding Plaintiff's Caribbean accent. Throughout his employment, supervisors and co-workers often pretended in an exaggerated manner that they could not understand Plaintiff due to his accent. Plaintiff also had difficulties in obtaining work uniforms from management as apparently freely distributed to the other gate checkers outside of his protected classes and was forced to go to Human Resources to obtain uniforms or to even purchase approximations on his own.

16.     Additionally, on at least one occasion, a supervisor told Plaintiff he would fire him and hire "two Mexicans or Filipinos" for what Plaintiff was paid. Ms. Leggett repeatedly told Plaintiff that he was "too old" for the job.

17.     Plaintiff made various complaints to managerial personnel and/or Human Resources about disparate treatment, not being given actual lunch breaks, age and national origin discrimination and harassment, and other matters (including secondhand racially-based threats from a co-worker as well as a repeatedly aggressively confrontational PepsiCo truck driver) with little feedback or result. Plaintiff additionally from time-to-time assisted other co-workers in

making complaints to Human Resources, which was known to Plaintiff's supervisors and commented upon.

18.     On or about June 12, 2019, Plaintiff received a coaching from Ms. Leggett for a mistake made by a "yard person" who failed to pull a trailer to a dock. Ms. Leggett contended that the yard person's error was Plaintiff's fault because he had allegedly written the incorrect load number on a bill of lading, despite the correct load number being prominently printed on the bill of lading.

19.     On or about June 14, 2019, Plaintiff again complained to management regarding his work conditions and treatment, including the uneven work load.

20.     On or about July 15, 2019, immediately following Plaintiff's return from a week-long vacation, Defendant terminated Plaintiff for the stated reason of allegedly miscounting the number of pallets on a truck approximately six days before leaving on vacation. Plaintiff asserts that there was no miscount and that this matter was wholly fabricated as a pretext to terminate Plaintiff. Defendant replaced Plaintiff with a worker believed to be in his late 20s or early 30s.

21.     Upon information and belief as known in good faith to Plaintiff, other co-workers outside of his protected classes (age, national origin) and/or who had not made complaints to management and/or human resources as did Plaintiff were generally not held to the same non-existent or changing standards and/or workplace conditions. At all times, Plaintiff met the legitimate business expectations of Defendant.

**Count I—Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.***

22.     Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-One as if set out in full herein.

23.     Defendant discriminated against Plaintiff with regard to the terms and conditions of his employment, including but not limited to his discharge, due to his engagement in protected activities including making complaints to his supervisors and/or human resources, regarding harassment, discrimination and/or a hostile workplace based upon his national origin, or alternatively, what Plaintiff reasonably believed to be harassment, discrimination and/or a hostile workplace, all of which Defendant knew of. Plaintiff's complaints were protected activities.

24.     This retaliation against Plaintiff for engaging in protected activities constituted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

25.     The Defendant's conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

26.     Defendant's acts of malice, spite, and ill will which evince a conscious disregard for the rights of Plaintiff include, but are not limited to: retaliating against him due to his engagement in protected activity and discharging him because of his engagement in protected activity.

27.     As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, lost benefits and other wages, emotional distress and attorney's fees and costs. Due to the severity of Defendant's conduct, Plaintiff is also entitled to punitive damages.

**Count II--Discrimination in Violation of Title VII of the Civil Rights Act of 1964**

28.     Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-One as if set out in full herein.

29.     Defendant discriminated against Plaintiff with regard to the terms and conditions of his employment, specifically, with regard to his termination, pre-termination discipline and terms and conditions of employment, due to his national origin.

28.     The termination, pre-termination discipline and terms and conditions of employment of Plaintiff constituted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

29.     The Defendant's conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

30.     As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, lost benefits and other wages, emotional distress and attorney's fees and costs. Due to the severity of Defendant's conduct, Plaintiff is also entitled to punitive damages.

**Count III—Retaliation in Violation of the Age Discrimination in Employment Act**

31.     Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-One as if set out in full herein.

32.     Defendant discriminated against Plaintiff with regard to the terms and conditions of his employment, including but not limited to his discharge, due to his engagement in protected activities including making complaints to his supervisors and/or human resources, regarding harassment, discrimination and/or a hostile workplace based upon his age, or alternatively, what Plaintiff reasonably believed to be harassment, discrimination and/or a hostile workplace, all of which Defendant knew of. Plaintiff's complaints were protected activities.

33.     This retaliation against Plaintiff for engaging in protected activities constituted a violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq*.

34.     The Defendant's conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

35.     Defendant's acts of malice, spite, and ill will which evince a conscious disregard for the rights of Plaintiff include, but are not limited to: retaliating against him due to his engagement in protected activity and discharging him because of his engagement in protected activity.

36.     As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, lost benefits and other wages, emotional distress and attorney's fees and costs. Due to the willfulness of Defendant's conduct, Plaintiff is also entitled to liquidated damages.

**Count IV--Discrimination in Violation of the Age Discrimination in Employment Act**

37.     Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-One as if set out in full herein.

38.     Defendant discriminated against Plaintiff with regard to the terms and conditions of his employment, specifically, with regard to his termination, pre-termination discipline and terms and conditions of employment.

39.     The termination, pre-termination discipline and terms and conditions of employment of Plaintiff constituted a violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*

40.     The Defendant's conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

41.     As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front

pay, lost benefits and other wages, emotional distress and attorney's fees and costs. Due to the willfulness of Defendant's conduct, Plaintiff is also entitled to liquidated damages.

### Count V—Violation of the Fair Labor Standards Act

42.      Plaintiff respectfully incorporates his allegations set forth in Paragraphs One through Twenty-One as if set out in full herein.

43.      Under the Fair Labor Standards Act, as codified at 29 U.S.C. § 201, *et seq.*, Defendant has a duty to pay to Plaintiff overtime compensation at a rate of one-and-a-half times his usual rate of pay. Defendant additionally has a duty to compensate Plaintiff for his time spent working while forced to clock out while eating lunch in the guard shack.

44.      Plaintiff is a non-exempt employee.

45.      Despite Plaintiff not being subject to any exemptions to the Fair Labor Standards Act, Defendant repeatedly and commonly forced Plaintiff to clock out for lunch despite being required to stay and work in the guard shack continuing through July of 2019. Defendant failed and refused to pay Plaintiff for this work performed while clocked out, including resultant overtime compensation.

46.      Defendant's failure and refusal to pay for time worked and/or overtime compensation to Plaintiff was intentional, knowing and willful.

47.      As a result of Defendant's violation of the Fair Labor Standards Act, Plaintiff has suffered damages including unpaid wages and unpaid overtime compensation. Because Defendant's acts and omissions were willful, it is further liable to Plaintiff for liquidated and/or compensatory damages.

### Count VI—Retaliation in Violation of the Fair Labor Standards Act

48. Plaintiff respectfully incorporates his allegations set forth in Paragraphs One through Twenty-One as if set out in full herein.

49. Plaintiff engaged in protected activity under the Fair Labor Standards Act, namely by making complaints to management and/or human resources regarding the lack of provided lunch breaks and/or being forced to clock out to eat while still working in the guard shack.

50. Plaintiff suffered adverse employment action including pre-termination discipline as well as his ultimate termination.

51. Such adverse employment actions were taken against Plaintiff due to his making complaints regarding the lack of provided lunch breaks and/or being forced to clock out to eat lunch while still working in the guard shack.

WHEREFORE, the Plaintiff, Alwyn Richards, by counsel, prays that this honorable Court grant him such relief to which he is entitled including, but not limited to, lost back pay, loss of front pay, unpaid wages, unpaid overtime, compensatory damages and punitive damages, liquidated damages as well as pre- and post-judgment interest, attorney's fees and litigation costs and such other relief as deemed just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

**ALWYN RICHARDS,**

_____/s/_____
Steven B. Wiley (VSB No. 47531)
WILEY LAW OFFICES, PLLC
440 Monticello Ave., Suite 1817
Norfolk, Virginia 23510
(757) 955-8455
(757) 319-4089 facsimile
swiley@wileylawoffices.com

*Counsel for Plaintiff*